UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE

2007 AUG -3 P 2: 35

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | 3:07-CR-77 |
| | ) | JUDGE PHILLIPS |
| JOHN L. SYMONDS | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, John L. Symonds and the defendant's attorney, Anthony A. Joseph, have agreed upon the following:

1. The defendant will waive Indictment and arraignment and plead guilty to a one-count Information charging the defendant with the following offense: the knowing and willful making of a materially false statement in a matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States in violation of 18 U.S.C. § 1001.

The punishment for this offense is as follows. The maximum statutory penalty for the count charged in the Information is a maximum term of imprisonment of five (5) years and a fine of $250,000, or both, a term of supervised release of three (3) years, a mandatory assessment of $100, and any Court-ordered restitution and forfeiture.

The United States also agrees not to further prosecute the defendant in the Eastern District of Tennessee or the Northern District of Alabama for any other non-tax criminal offenses committed by the defendant related to his receipt, through Krohn Enterprises, LLC, a company that

he co-owned with his former spouse, of two checks from U.S. Tool &Die, Inc. in February, 2002, payable to Krohn Enterprises, in the amounts of $29,212.77 and $25,000.

The United States and the defendant agree that venue lies in the Eastern District of Tennessee for the offense charged in the information.

2. The parties agree that the appropriate disposition of this case would be the following as to the count charged in the Information:

    a) The Court may impose any lawful term of imprisonment up to the statutory maximum;

    b) The Court may impose any lawful fine up to the statutory maximum;

    c) The Court may impose any lawful term of supervised release;

    d) The Court will impose a special assessment fee as required by law; and

    e) The Court may order forfeiture as applicable and restitution as appropriate.

3. The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt:

    a) the defendant made a statement;

    b) the statement was false;

    c) the statement was material;

    d) the defendant made the statement knowingly and willingly; and

e) the statement pertained to an activity within the jurisdiction of a federal agency.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts which satisfy these elements. These are the facts stipulated by the defendant and the United States and submitted for the defendant's guilty plea:

a) From November 13, 2000 through December 31, 2002, the Tennessee Valley Authority (TVA), was an agency of the executive branch of the Government of the United States. TVA is headquartered in Knoxville, Tennessee. All financial disclosure forms, including Office of Government Ethics' OGE Forms 450 and OGE Forms 450-A, executed and submitted by TVA employees who work at TVA's Brown's Ferry Nuclear Plant (TVA-BFN) located in Athens, Alabama, are forwarded upon execution and submission by the TVA-BFN employee to TVA's headquarters in Knoxville, Tennessee in the Eastern District of Tennessee, where they are reviewed and retained by TVA's Office of General Counsel.

b) From November 13, 2000 through December 31, 2002, John L. Symonds, was employed as a TVA-BFN manager.

c) As a TVA-BFN manager, John L. Symonds was required to complete and submit to TVA an OGE Form 450, entitled "Executive Branch Confidential Financial Disclosure Report." As a TVA-BFN manager, John L. Symonds was required annually to update the financial disclosures set forth in OGE Form 450, which could be accomplished through the completion and

submission to TVA of the OGE Optional Form 450-A, in lieu of filing a new OGE Form 450 each year.

    d) On or about November 13, 2000, John L. Symonds executed and submitted an OGE Form 450 that was forwarded to TVA headquarters in Knoxville, Tennessee. On that form, John L. Symonds answered "None" to the question that asked him to: "Identify for you, your spouse, and dependent children: 1) assets with a fair market value greater than $1,000 at the close of the reporting period or producing income over $200; and 2) sources of earned income such as salaries, fees, honoraria (other than U.S. Government salary or retirement benefits, such as the Thrift Savings Plan) which generated over $200 in income during the reporting period." On his November 13, 2000 OGE Form 450, John L. Symonds certified that his statements were "true, complete, and correct to the best of [his] knowledge."

    e) On or about October 16, 2001, John L. Symonds executed and submitted an OGE Form 450-A that was forwarded to TVA headquarters in Knoxville, Tennessee. On that form Symonds certified that "[a]fter examining a copy of [his] last confidential financial disclosure report (OGE Form 450)", which was his November 13, 2000 OGE Form 450, that (1) he had "no new reportable assets or sources of income, for [himself], [his] spouse or [his] dependent children." and that (2) "neither [his] spouse nor [he] [had] new reportable sources of income from non-Federal employment."

    f) On or about October 21, 2002, John L. Symonds executed and submitted an OGE Form 450-A that was forwarded to TVA headquarters in Knoxville, Tennessee (hereinafter the "October 21, 2002 OGE Form 450-A"). On that form Symonds certified that "[a]fter examining a copy of [his] last confidential financial disclosure report (OGE Form 450)", which was his November 13, 2000 OGE Form 450, that (1) he had "no new reportable assets or sources of income,

for [himself], [his] spouse or [his] dependent children." and that (2) "neither [his] spouse nor [he] [had] new reportable sources of income from non-Federal employment."

g) However, on or about February 7, 2002, during the reporting period for his October 21, 2002 OGE Form 450-A, John L. Symonds co-owned Krohn Enterprises, LLC ("Krohn") with his former spouse, and on or about February 7, 2002, Krohn, was paid $29,212.77 by Check No. 31738 drawn on the Mellon Bank account of U.S. Tool & Die Inc. ("USTD"). That $29,212.77 check was deposited into the Krohn Heritage Bank account, and the proceeds of that check were used to pay the personal expenses of John L. Symonds and his former spouse. On or about February 7, 2002, John L. Symonds knew that USTD had been directed to send that $29,212.77 check to Krohn by Holtec International (Holtec) – a company that John L. Symonds knew as of that time (1) had contracted with TVA in November 2001 to design and construct a dry cask storage system for spent nuclear fuel rods at TVA BFN and (2) had contracted with USTB to fabricate some of the construction materials for the TVA BFN dry cask storage system.

h) Additionally, on or about February 27, 2002, during the reporting period for his October 21, 2002 OGE Form 450-A, John L. Symonds co-owned Krohn Enterprises, LLC with his former spouse, and on or about February 27, 2002, Krohn Enterprises, LLC, was paid $25,000 by Check No. 31970 drawn on the Mellon Bank account of USTD. That $25,000 check was deposited into the Krohn Enterprises, LLC, Heritage Bank account, and the proceeds of that check were used to pay the personal expenses of John L. Symonds and his former spouse. On or about February 27, 2002, John L. Symonds knew that USTB had been directed to send that $25,000 check to Krohn by Holtec – a company that John L. Symonds knew as of that time (1) had contracted with TVA in November 2001 to design and construct a dry cask storage system for spent nuclear fuel

rods at TVA BFN and (2) had contracted with USTB to fabricate some of the construction materials for the TVA BFN dry cask storage system.

        i) John L. Symonds knowingly and willfully failed to disclose his receipt, through Krohn Enterprises, LLC, of either Check No. 31738 in the amount of $29,212.77 or Check No. 31970 in the amount of $25,000 on the OGE Form 450-A that he executed and submitted to TVA on or about October 21, 2002.

        j) John L. Symonds's knowing and willful failure to disclose his receipt of the above-referenced checks on his October 21, 2002 OGE Form 450-A and his submission of that form to TVA constituted a materially false and fraudulent statement to TVA that pertained to an activity within the jurisdiction of a federal agency.

    5.    The defendant understands that by pleading guilty he is giving up several rights, including:

        a) the right to be indicted by a grand jury for these crimes;

        b) the right to plead not guilty;

        c) the right to a speedy and public trial by jury;

        d) the right to assistance of counsel at trial;

        e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

        f) the right to confront and cross-examine witnesses against him;

        g) the right to testify on his own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

        h) the right not to testify and to have that choice not used against him.

6. The defendant further agrees to cooperate completely and truthfully with any and all law enforcement agents and the United States Attorney's Office's personnel. This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or United States Attorney's personnel whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved. The defendant further agrees to testify completely and truthfully before a federal grand jury, at any trial, or any other time or proceeding if called upon by the United States to do so. Upon request, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody or control that are relevant to the United State's inquiries.

7. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall be applied to restrict the use of any information, (1) known to the United States prior to entering into this written plea agreement; (2) obtained from any other source; or (3) concerning the defendant's prior criminal record. Should either of the following occur (1) the defendant provides false or materially misleading information during the course of the defendant's cooperation; or (2) later moves to withdraw the defendant's guilty plea, then the United States may make use of any information provided by the defendant for any purpose in any subsequent proceeding, including grand jury, trial and sentencing phases of this case or further prosecutions against the defendant.

8. At the time of sentencing, the United States will bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

United States v. John L. Symonds
Plea Agreement 7

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Should the defendant engage in any conduct or make statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court. The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

12. The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately

and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by set-off of program payments, execution on non-exempt property, and any other means the United States deems appropriate.

13. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement, moves to withdraw his guilty plea, or violates any court order, local, state or federal law pending the resolution of this case, the United States will have the right to void any or all parts of the agreement. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the guilty plea in this case.

14. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

James R. Dedrick
United States Attorney

___8-3-07___  By: _____/s/_____
Date           Francis M. Hamilton III
               Assistant United States Attorney

___8-3-07___       _____/s/_____
Date               John L. Symonds
                   Defendant

___8/3/07___       _____/s/_____
Date               Anthony A. Joseph
                   Attorney for John L. Symonds
                   Maynard Cooper & Gale P.C.
                   1901 Sixth Avenue North, Suite 2400
                   Birmingham, AL 35203